UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  20-80412-Civ-Middlebrooks/Brannon

ROBERTO PAUL MENDOZA,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT RECOMMENDING DENIAL OF
## MOTION TO VACATE SENTENCE UNDER § 2255

**THIS CAUSE** is before the Court on Movant Roberto Paul Mendoza's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [DE 1], which has been referred to the undersigned for appropriate disposition [DE 3].  Respondent has responded in opposition [DE 7], and Movant has replied [DE 20].  Having carefully reviewed all pertinent portions of the records in this case and the underlying criminal case, the undersigned **RECOMMENDS** that the Motion be **DENIED** for the following reasons.

## I.      BACKGROUND

On February 22, 2018, a federal criminal complaint was issued charging Movant with possession with intent to distribute heroin [CR DE 1].[1]  On February 27, 2018, attorney Richard Lubin filed an appearance on behalf of Movant, Movant stipulated to pretrial detention, and an arraignment date was set [CR DE 3/4/5].

_____

[1] Citations to the underlying criminal case, 18-80084-Cr-Middlebrooks will be "[CR DE__]," while citations to the instant § 2255 civil proceeding will be "[DE__]."

On April 26, 2018, a federal grand jury in the Southern District of Florida returned a five-count Indictment charging Movant with distribution of heroin and carfentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts I-III); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count IV); and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count V) [CR DE 15]. On May 13, 2018, attorney Gregory Morse filed an appearance as co-counsel on behalf of Movant [CR DE 15].

Movant thereafter agreed to plead guilty to all five counts [CR DE 24]. Movant's agreement to plead guilty is memorialized in a fully executed written Plea Agreement [*Id.*]. Movant signed the Plea Agreement and initialed every single paragraph. Among other things, the Plea Agreement clearly sets forth the potential penalties that Movant faced at sentencing [*Id.* at ¶ 3]. Movant acknowledged that by pleading guilty to Counts One, Two, and Three, he may be sentenced up to a maximum term of 20 years in prison, followed by a minimum of three years up to life of supervised release, and a $1,000,000 fine [*Id.*]. As to Count Four, Movant understood the Court must impose the mandatory minimum sentence of 5 years in prison, but the Court could impose the maximum of up to 40 years in prison, followed by a mandatory minimum of four years up to life of supervised release, and a $5,000,000 fine [*Id.*]. Finally, as to Count Five, Movant understood that the Court must impose a mandatory minimum sentence of five years in prison and could impose up to a maximum term of life in prison, and that this sentence must be served consecutive to any other imposed sentence, followed by up to three years of supervised release, and a fine of $250,000 [*Id.*].

Movant acknowledged that the Court would consult the U.S. Sentencing Guidelines to compute his sentence range, but that the Court could depart from the guidelines and decide to

2

sentence Movant to a term higher or lower than the computed range [*Id.* ¶ 2].  Mendoza was aware that, when computing the guideline range, the Court would take into consideration a Pre-Sentence Investigation Report ("PSI") to be prepared by U.S. Probation [*Id.*].  Notably, under the Plea Agreement the Government expressly "reserve[d] the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning [Movant] and [Movant's] background.") [*Id.* ¶ 5].

The Plea Agreement states that, based on the charged offenses and Movant's criminal history category, Movant's sentencing guidelines range would include a period of incarceration of between 211 and 248 months [*Id.* ¶ 7].  Movant acknowledged that the sentence had not yet been imposed [*Id.* ¶ 10]. The Plea Agreement states that Movant fully discussed the agreement's terms with his counsel, that his counsel answered each of his questions regarding the strength of the Government's case, and that he was fully satisfied with his counsel's representations [*Id.* ¶ 8].  The Plea Agreement expressly allowed the Government to inform the Court about the uncharged offense at sentencing [CR DE 24 ¶ 5 (the Government "reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning [Movant] and [Movant's] background.")].

The Stipulated Factual Proffer that accompanied the Plea Agreement contained the following recitation of facts in support of Movant's criminal charges.  Movant sold drugs to undercover law enforcement agents on November 29, 2017, December 6, 2017, and December 15, 2017 [CR DE 25 ¶¶ 1-3].  All three transactions were audio and video recorded [*Id.*].  In the first two transactions, Movant sold the undercover agent 24 baggies containing a mixture of

heroin, carfentanyl, and cocaine [*Id.* ¶¶ 1-2].  In the last transaction, Movant sold the undercover agent 25 baggies of carfentanyl [*Id.* ¶ 3].

On February 21, 2018, law enforcement executed a search warrant at Movant's residence and discovered: (1) $6,000 in cash; (2) approximately six ounces of heroin; (3) two digital scales; and (4) a stolen handgun [*Id.* ¶ 4].  Following this search, Movant was detained [*Id.* ¶ 5].  In post-*Miranda* statements to law enforcement, Movant admitted to selling heroin beginning in 2012 or 2013 [*Id.*].  Movant further admitted to owning the handgun seized from his residence and that he used the handgun as protection as part of his drug trafficking activities [*Id.*].  Movant then provided written consent for law enforcement to search his vehicle [*Id.*].  During that search, law enforcement seized a small bag of heroin/fentanyl, two cellular phones, and an additional $2,408 in cash money [*Id.* ¶ 6].  Movant admitted that all items seized from his residence and car were assets that were either used, intended for use, or proceeds in connection with Movant's drug trafficking activities [*Id.* ¶ 7].  As with the Plea Agreement, Movant signed the Stipulated Factual Proffer and initialed each paragraph.

On July 25, 2018, Movant appeared before the Court with his two attorneys for a change of plea hearing [CR DE 39].  The Court advised Movant that the purpose of the hearing was to "make sure [Movant had] carefully considered his decision to plead guilty in this case."  [*Id.* at 3].  The Court further advised that if Movant did not understand any question, he should tell the Court, and that if Movant wanted to stop at any point to speak with his counsel, he could [*Id.*].  The Court asked Movant if he had reviewed and discussed the charges filed against him with his counsel [*Id.* at 4].  Movant confirmed that he had and that he was satisfied with the representation provided by his two attorneys of record [*Id.*].  Movant also confirmed that he

had reviewed the Plea Agreement with his counsel, that he understood the terms of the agreement, and that he signed the Plea Agreement after reviewing it [*Id.*].

In response to further Court inquiry, Movant agreed that the Government promised him nothing in exchange for his guilty plea, that no one forced him to plead guilty, and that he understood he did not have to plead guilty [*Id.* at 8].  Movant acknowledged the accuracy of the Stipulated Factual Proffer and confirmed that he signed it after reviewing and discussing it with his counsel [*Id.* at 8-9].  At the Court's request, the prosecutor then provided an overview of the facts that would have been presented had the case proceeded to trial [*Id.* at 9-13].  After the prosecutor completed her recitation of the facts, Movant affirmed that the prosecutor's statements accurately described Movant's criminal conduct [*Id.*]  The Court then formally accepted Movant's guilty plea and set a sentencing hearing date [*Id.* at 13-15].

At sentencing, the Court began by acknowledging the final sentencing guideline range of 211 – 248 months in prison as set forth in the Plea Agreement and acknowledged the parties' agreement that neither side would seek a variance from this range [CR DE 40 at 2].  The prosecutor argued that Movant should receive a sentence at the high end of the guideline range to account for the death of an individual victim in the case [*Id.* at 3].  In this regard, the prosecutor advised that a recovering heroin addict identified as AJ Whitlock, also known as Jimmy, had purchased what he believed to be heroin from Movant [*Id.*].  According to the prosecutor, Mr. Whitlock died after using the drugs he purchased from Movant which turned out to be straight carfentanyl, a drug the prosecutor described as one used to tranquilize elephants that is "50 to 100 times stronger than heroin" and thus far more dangerous [*Id.*].

The prosecutor acknowledged that Movant was not formally charged with Mr. Whitlock's death—which would have significantly increased Movant's potential penalties—

5

and that Mr. Whitlock's death was not mentioned in the Indictment [*Id.* at 5].  The prosecutor offered several reasons for the decision not to charge Movant with Mr. Whitlock's death, including but not limited to Movant's honesty in his post-arrest statements and his apparent remorse after being told by law enforcement that someone had died as a result of his drug distribution activities [*Id.* at 5-6].  On the other hand, the prosecutor represented to the Court that, when questioned by law enforcement, Movant admitted to knowingly selling drugs to Mr. Whitlock that contained fentanyl [*Id.*, 7-8].  Further, according to the prosecutor, Movant admitted to knowing that fentanyl is a considerably more potent, and deadly, drug [*Id.*]. Ultimately, the prosecutor asked the Court to sentence Movant to 20.5 years (246 months) in prison because "at the end of the day, there is a young man who will never enjoy another day with his wife, he is dead, and he is dead because the defendant sold him what he knew to be a very, very dangerous substance" [*Id.* at 9].

Next, Mr. Whitlock's wife and brother addressed the Court and asked that Mr. Whitlock's death be taken into consideration when determining an appropriate sentence for Movant [*Id.* at 11-17].

Defense counsel argued next for the low end of the guideline range on grounds that Movant had accepted responsibility, had been fully cooperative with law enforcement, and did not require the Government to go respond to pretrial motions or go to trial [*Id.* at 19-20]. Defense counsel further argued that Movant had an unremarkable prior criminal history as had been acknowledged by the Government [*Id.* at 21].  Movant spoke last and began his statement by apologizing to Mr. Whitlock's wife and brother who were present in the courtroom stating that Mrs. Whitlock "was right about Jimmy.  He was a really good person, and she will never

get him back." [*Id.* at 22].  Movant "accept[ed] full responsibility" and apologized to all involved, including Movant's own family and children [*Id.*].

The Court acknowledged that the crimes charged were serious and that while the guidelines account for this seriousness, "the guidelines alone don't take into account the fact that a death resulted from a sale of these drugs." [*Id.* at 23].  Ultimately, the Court sentenced Movant to 240 months in prison—8 months less than the top end of the guideline range [*Id.*].

On October 12, 2018, Movant timely filed a notice of direct appeal [CR DE 35].  On February 25, 2019, the Eleventh Circuit Court of Appeals entered an Order of Dismissal based upon Movant's notice of voluntary dismissal of his direct appeal [CR DE 42].  One year and fourteen days later, on March 10, 2020, Movant filed the instant § 2255 Motion.

## II.      DISCUSSION

### A.      *Legal Standard*

For a federal inmate seeking post-conviction relief, 28 U.S.C. § 2255 provides a one (1) year statute of limitations.  The statute of limitations period runs from the latest of:

1. The date on which the judgment of conviction becomes final;

2. The date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such government action;

3. The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. The date on which the facts supporting the claim or claims presented could have been discovered through exercise of due diligence.

28 U.S.C. § 2255(f).

A judgment is "final" for purposes of the above statute of limitations "'when it terminates the litigation between the parties on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.'" *St. Louis, Iron Mountain & S.R.R. Co. v. So. Express Co*., 108 U.S. 24, 28 (1883). For "[f]ederal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one year limitation period starts to run when the time for seeking such review expires." *Clay v. U.S.*, 537 U.S. 522, 532 (2003). "If a federal prisoner does not file a timely petition for a writ of certiorari after the disposition of his direct appeal . . . his conviction becomes final on the date on which the prisoner's time for filing such a petition expires, which is 90 days after the entry of judgment on direct appeal." *Mantecon v. U.S.*, 160 F. App'x. 948, 954 (11th Cir. 2005) (citing *Clay*, 537 U.S. at 532). When a defendant does not appeal, a judgment of conviction becomes final upon the expiration of time to file a direct appeal. *Akins v. U.S.*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000).

A federal prisoner is entitled to § 2255 relief "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . . or that the sentence was in excess of the maximum authorized by law. . . or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Errors warranting modification must raise "a fundamental defect which inherently results in a complete miscarriage of justice." *U.S. v. Addonizio*, 442 U.S. 178, 185 (1979). A movant must "clear a significantly higher hurdle than would exist on direct appeal." *U.S. v. Frady*, 456 U.S. 152, 166 (1982). Notably, in cases like the instant one involving alleged ineffective assistance of counsel, "cases in which habeas [movants] can properly prevail on the ground of ineffective

8

assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995).

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the error, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington,* 466 U.S. 688, 695 (1984). In order for movant to make such a showing, he must satisfy the two-pronged test outlined in *Strickland:*

> First, the defendant must show that counsel's performance was deficient. This requires the showing that counsel made errors so serious that counsel was not functioning as the "counsel" he was guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

Not only must the movant's representing attorney's conduct be found objectively unreasonable in the given circumstance, but that objectively unreasonable conduct must indicate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (quoting *Strickland*, 466 U.S. at 694).

The "burden of proof for showing ineffective assistance of counsel is, and remains, on the movant throughout a habeas corpus proceeding." *Roberts v. Wainwright*, 666 F.2d 517, 519, n.34 (11th Cir.), *cert. denied*, 103 S.Ct. 174 (1982). Courts should not second guess the strategic decisions of trial counsel. *Tafero v. Wainwright*, 769 F.2d 1314, 1320 (11th Cir. 1986) ([a] lawyer's election not to present mitigating evidence is a strategic decision which the court should avoid second guessing); *Mulligan v. Kemp*, 771 F.2d 1143, 1441 (11th Cir. 1985)("in evaluating strategic choices of trial counsel, we must give great deference to choices which are

9

made under the explicit direction of the client); *Spanziano v. Singletary*, 36 F.3d 1028, 1040 (11th Cir. 1994) ( "a defense attorney's sense of a jury's reaction to testimony or evidence is a sound basis on which to make strategic decisions).

To be entitled to an evidentiary hearing on a § 2255 motion, a movant must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief.  *See U.S. v. Aiello*, 900 F.2d 528, 534 (2nd Cir. 1990); *Newfield v. U.S.*, 565 F.2d 203, 207 (2nd Cir. 1977).  Where a defendant's claims, even if true, fail to state a claim upon which habeas relief can be granted, the claims are subject to dismissal without a hearing.  *Machibroda v. U.S.*, 368 U.S. 487, 495 (1962); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).  Thus, no evidentiary hearing is required where the written record conclusively shows that the defendant is not entitled to relief. *See Anderson v. U.S.*, 948 F.2d 704, 706 (11th Cir. 1991); *Tejada*, 941 F.2d at 1559.

        **B.**     **_Party Contentions_**

        1.  *Movant's § 2255 Motion*

Movant argues that his motion is timely because it was filed within one year of when his time for appeal to the U.S. Supreme Court elapsed [DE 1 at 2].  Movant argues that he is entitled to the 90-day period authorized for certiorari petition even though he voluntarily withdrew his direct appeal to the Eleventh Circuit [*Id.*].

On the merits, Movant raises two grounds of alleged ineffective assistance of counsel. First, Movant argues his trial counsel provided ineffective assistance "leaving [Movant] no choice but to seek mitigation of his sentence through a plea agreement." [DE 1 at 10].  In this regard, Movant asserts his trial counsel erred by not filing and pursuing a pretrial motion to suppress Movant's involuntary statements to law enforcement [*Id.*].  Movant also alleges that

his counsel was ineffective in failing to file a motion *in limine* to exclude evidence pertaining to the death of Mr. Whitlock—which Movant describes as an "uncharged crime"—because there was no evidence to show that the drugs that Movant sold to Mr. Whitlock's wife was the legal cause of Mr. Whitlock's death [*Id.* at 14].  Movant further contends that trial counsel failed to share or review discovery in the case with Movant in his case despite many requests by Movant and Movant's family members [*Id.*].

Second, Mendoza alleges his trial counsel was ineffective during the sentencing phase of Movant's criminal proceedings by allowing the Government to argue facts of Mr. Whitlock's death to oppose mitigation of Movant's sentence [*Id.* at 17].  Movant argues that his trial counsel was ineffective by failing to object to the testimony of Mr. Whitlock's wife and brother during his sentencing hearing regarding Mr. Whitlock's death [*Id.*].  Movant seeks an evidentiary hearing on his claims of ineffective assistance.

### 2. *Government's Response*

First, the Government argues that Movant's motion is untimely [DE 7 at 10].  The Government contends that, while habeas petitioners are generally authorized the 90-day period to file for certiorari before the one-year limitations period begins to run, in instances of voluntary withdrawal of a direct appeal, petitioners are not entitled to this 90-day period [*Id.*]  In support, the Government relies substantially on *Westmoreland v. Hetzell*, 840 F.Supp 2d 1275 (N.D. Ala. 2011), where the court concluded that a movant is not entitled to the 90-day period for certiorari before the limitations period begins to run when a movant voluntarily withdraws his or her direct appeal [*Id.* at 14].

Second, the Government contends that the "errors" Movant claims his trial counsel made were strategic choices that do not rise to the level of ineffective assistance.  According to

the Government, the agreed-upon facts set forth in the stipulated factual proffer—including detailed information about three controlled undercover buys and the results of searches conducted of Movant's residence and vehicle—demonstrate that the evidence against Movant was overwhelming.  The Government contends that, due to the overwhelming amount of evidence accumulated against Movant, the most logical choice was to cooperate in hopes of a beneficial plea agreement [*Id.* at 19-29].

Lastly, the Government counters that Movant's counsel did not err when failing to object to evidence the Government presented regarding the overdose death of Mr. Whitlock. The Government contends the ability to present the evidence of Mr. Whitlock's death was bargained for in the Plea Agreement that Movant reviewed and signed [*Id.* at 29].  In addition, the Government argues that Movant fails to establish that he suffered any prejudice [*Id.*].

### 3.  *Movant's Reply*

In his reply, Movant incorporates by reference his arguments on the merits asserted in his original Motion.  Regarding timeliness, Movant claims his motion is not time-barred and cites to cases from federal courts in Florida, including the Southern District of Florida, as standing for the proposition that federal habeas movants are entitled to the 90-day period to file certiorari with the Supreme Court before the applicable limitations period begins to run.

### C.  <u>Analysis</u>

### 1.  *Timeliness*

As a threshold matter, the parties dispute whether Movant's § 2255 motion is timely. This dispute turns on whether a movant is entitled to the 90–day period to apply for certiorari in situations where a movant voluntarily withdraws his or her direct appeal.

Federal courts in Florida have not reached a consensus on this issue. The Northern District of Florida is split. *Compare Adair v. Tucker*, 2014 WL 2805277 1, 3 (N.D. Fla. 2014). ("[T]he better reasoned view may be that the statute of limitations begins to run on the date the appeal is voluntarily dismissed" *with U.S. v. Reed*, 2011 WL 2038627 (N.D. Fla. April 4, 2011) ("While this court agrees with the underlying logic of the Government's statement that a defendant should have no reason to file [a petition for certiorari after voluntarily withdrawing an appeal] this is not the same as saying he is legally foreclosed from doing so." Petitioner was entitled to the 90-day period for certiorari before the limitations period began to run).

Meanwhile, at least one court in our Southern District of Florida has found that a case does not become final until after the 90-day period for certiorari has elapsed even following the voluntary withdrawal of a direct appeal. *See Curry v. U.S.*, 20134 WL 2859113 (S.D. Fla. 2014). In *Curry*, a movant—six (6) years after he voluntarily withdrew his direct appeal from the Eleventh Circuit Court of Appeals—filed a motion to vacate sentence in accordance with 28 U.S.C. § 2255. *Id.* at *1. Although the motion to vacate was ultimately found time-barred, the Court reasoned that the limitations period began to run 90 days after the Eleventh Circuit dismissed his direct appeal.

Movant relies upon three cases from the Northern District of Florida that follow reasoning similar to that set forth in *Curry*. *See U.S. v. Reed*, 2011 WL 2038627 (N.D. Fla. 2011) (while a defendant who dismisses his appeal should have no reason to pursue a writ of certiorari and review from the Supreme Court, that does not mean he is legally prevented from doing so. As such, the more reasoned approach is to allow a defendant the 90-day period to file certiorari before the limitations period begins to run); *Brandon v. Mcneil* 2009 WL 559530 (N.D. Fla. 2009) (a defendant generally is entitled to the 90-day period to file a petition of writ

of certiorari with the Supreme Court before the limitations period for a § 2255 motion begins to run); *Chapman v. McNeil* 2008 WL 2225659 (N.D. Fla. 2008) (a state conviction became final 90 days after the state appellate court granted defendant's motion for voluntary dismissal of the defendant's appeal).

Both *Adair* and *Westmoreland* involve state defendants that voluntarily withdrew appeals from state courts, and then petitioned for post-conviction relief in federal court.  In order for a state inmate's habeas petition to be granted, the inmate must "[have] exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254.  This is the reason both the aforementioned cases were rejected, as neither defendant exhausted their available state remedies when the defendant voluntarily withdrew their appeals.  This is substantively different than the requirements of 28 U.S.C. § 2255.

There is no exhaustion requirement for federal inmates seeking habeas relief.  Federal inmates have one year to file a habeas petition from "the date on which the judgement of conviction becomes final." 28 U.S.C. § 2255(f)(1). "[F]inality attaches . . . when [the Supreme Court of the United States of America] affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. U.S.*, 537 U.S. 522, 527 (2003).

Here, as in *Reed*, even though unlikely, Movant had the ability to file a petition with the Supreme Court for certiorari after he voluntarily withdrew his direct appeal.  In this Court's view, the better reasoned approach is that a movant's one-year limitation period does not begin to run until after the 90-day period authorized for certiorari to the Supreme Court expires even if the movant voluntarily withdrew his or her direct appeal.  The Court in *Reed* is persuasive; although Movant should have no reason to pursue certiorari review after voluntarily moving to

14

dismiss his direct appeal, that does not mean he was legally foreclosed from pursuing such review. *See Reed*, 2011 WL 2038627 at 4. The Supreme Court had yet "to affirm this conviction on the merits or [decline] a petition for writ of certiorari." *Clay*, 537 U.S. at 527. As neither of these conditions were met and also taking into consideration that Movant was merely fourteen days into the 90-day period allowed for him to seek certiorari, this Court finds that Movant's motion is timely and will proceed to an evaluation of his claims on the merits.

## 2. *Alleged Ineffective Assistance of Counsel*

At the outset, the Court finds an evidentiary hearing unnecessary because, as will be demonstrated more fully below, the written record conclusively shows that Movant is not entitled to the relief he seeks. *See Anderson v. U.S.*, 948 F.2d 704, 706 (11th Cir. 1991); *Tejada*, 941 F.2d at 1559.

First, Movant argues that his trial counsel was ineffective by failing to move to suppress Movant's allegedly "involuntary" post-arrest statements to law enforcement. Even assuming *arguendo* that Movant's statements to law enforcement were subject to suppression, this alleged error cannot be said to have "deprived the [Movant] of a fair trial; a trial that's result is reliable." *Strickland*, 466 U.S. at 687.

This is because even without the evidence of Movant's post-arrest statements, the other evidence against Movant was overwhelming [DE 7-3; CR DE 39 at 9-12; Cr DE 40 at 3-10]. According to the Government, law enforcement's investigation into Movant's drug trafficking activities began with a tip from Mr. Whitlock's wife that Movant sold her heroin and that her husband died as a result of ingesting the drugs that Movant sold her. According to the stipulated factual proffer that Movant agreed to and signed, during the subsequent investigation, Movant sold drugs to an undercover agent on three separate occasions [CR DE 25 ¶¶ 1-3]. All three

15

transactions were audio and video recorded [*Id.*].  In the first two transactions, Movant sold the undercover agent 24 baggies containing a mixture of heroin, carfentanyl, and cocaine [*Id.* ¶¶ 1-2].  In the last transaction, Movant sold the undercover agent 25 baggies containing carfentanyl [*Id.* ¶ 3].

Following these recorded transactions, law enforcement secured and executed a search warrant at Movant's residence where they found $6,000 in cash, 6 to 7 ounces of heroin, digital scales, a stolen handgun, and other items associated with drug trafficking [*Id.* ¶ 4].  During a consent search of Movant's vehicle, law enforcement recovered additional evidence of drug trafficking activities, including over $2,000 in cash, cell phones, and baggies of heroin/fentanyl [*Id.* ¶ 6].

Considering the above evidence, while Movant's post-arrest statements to law enforcement were helpful to the prosecution, they were by no means necessary.  More so, it appears full cooperation from the beginning was part of Movant's strategy to receive leniency and argue for a favorable plea agreement from the Government and ultimately a lower prison sentence.

Courts should not second guess the strategic decisions of trial counsel. *Tafero v. Wainwright*, 769 F.2d 1314, 1320 (11th Cir. 1986) ([a] lawyer's election not to present mitigating evidence is a strategic decision which the court should avoid second guessing); *Mulligan v. Kemp*, 771 F.2d 1143, 1441 (11th Cir. 1985) ("in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the explicit direction of the client); *Spaziano v. Singletary*, 36 F.3d 1028, 1040 (11th Cir. 1994) ("a defense attorney's sense of a jury's reaction to testimony or evidence is a sound basis on which to make strategic decisions).

Here, the record is devoid of evidence to support the finding of an error rising to the level of constitutionally ineffective assistance of counsel. On the contrary, the record suggests an overall strategy by Movant and his counsel for Movant to cooperate and plead guilty in hopes of a lower sentence. During the sentencing hearing, Movant's trial counsel emphasized Movant's cooperation and acceptance of responsibility "from the very first moment he had contact with law enforcement" [CR DE 40 at 19]. Had Movant's trial counsel moved to suppress Movant's post-arrest statements to law enforcement, Movant would have been unable to pursue this argument.

Moreover, by the time of Movant's arrest, law enforcement had already conducted an extensive investigation into Movant's drug trafficking activities. At sentencing, Mr. Whitlock's wife made a statement indicating that she procured syringes and what she thought was heroin from Movant, that she prepared the needles with that procured drug for injection, that she and her husband injected that drug, and then her husband died in his sleep later that night [CR DE 39 at 11-13]. According to Mrs. Whitlock, a later autopsy report confirmed that Mr. Whitlock's cause of death of ingestion of carfentanyl [*Id.* at 13]. The Government was thus aware of facts to support a finding that Movant knowingly supplied the far more potent drug of carfentanyl instead of heroin to his customers [*Id.* at 4-6, 12-13]. Laboratory testing confirmed that carfentanyl was also in the drugs sold by Movant to the undercover agent. Thus, even without Movant's post-arrest statements to law enforcement, the Government had ample evidence to charge, and possibly convict, Movant of the uncharged offense relating to the overdose death.

Thus, had Movant opted to move for suppression and to not plead guilty, it is quite possible that the Government would have added another supportable charge against Movant for drug distribution resulting in death, which would have exposed Movant to far greater potential

17

penalties and a higher sentencing guideline range.  It appears this crime remained uncharged not based upon a lack of evidence, but because Movant cooperated from the outset with law enforcement and with the Government.  This lends credibility to a finding that Movant's full, complete, and immediate cooperation with law enforcement was a strategic choice by counsel, and not constitutionally ineffective assistance.

Movant also claims that his trial counsel's assistance was ineffective based on his counsel's alleged failure to share discovery with Movant.  This claim by Movant is clearly refuted by the Plea Agreement and the transcript of the change of plea hearing.  In the Plea Agreement, Movant signed his initials right next to a paragraph stating that "his attorney has answered each of his questions about the strength of the government's case as well as" Movant's rights to go to trial, cross-examine witnesses, call his own witnesses, testify on his own behalf, not be compelled to provide self-incriminating testimony, and appeal any adverse trial verdict" [CR DE 24 ¶ 8].  Movant confirmed that he was "fully satisfied with the representation provided by his attorney" [*Id.*].  Although the paragraph does not specifically say that Movant's attorney shared discovery with him, "fully satisfied" implies that Movant was not dissatisfied with his counsel's representation in any way.  If Movant, as he claims, was unsatisfied with his counsel's representation regarding discovery, the appropriate time to make that known was prior to Movant signing the Plea Agreement.  Movant did not.

Movant's second opportunity to express any dissatisfaction with his counsel's representation was during his plea colloquy with the Court.  The Court directly asked Movant, "[a]re you satisfied with the representation [Movant's counsel] Mr. Lubin and Mr. Morse have provided to you?"  [CR DE 39 at 4].  Movant's response while under oath: "Yes, Your Honor." [*Id.*].  The Court went on to discuss in detail the terms of the Plea Agreement, including the

18

potential penalties Movant faced at sentencing, the final sentencing guideline range, and the parties' agreement not to seek for the Court to depart above or below that range.  Movant at no time raised any objections or indicated any concern whatsoever regarding his understanding of the Plea Agreement.  On the contrary, the change of plea hearing transcript reveals that Movant reviewed the Plea Agreement with his counsel, understood its terms, and was "fully satisfied" with the representation provided by his two attorneys of record.  Thus, Movant was given ample opportunity to express his dissatisfaction with his counsel's alleged lack of sharing discovery with him, but instead affirmatively—in writing in the Plea Agreement and verbally during his change of plea hearing — claimed he was satisfied with his counsel's representation.  This ineffective assistance claim is thus without merit.

Third, Movant claims his trial counsel's assistance was ineffective because counsel failed to file a motion *in limine* to preclude the Government from introducing facts of the uncharged offense involving Mr. Whitlock's overdose death.  Aside from apparently being part of the overall strategy of Movant's trial counsel to engage in full cooperation in exchange for a lower potential sentence, the Government claims that being able to bring up instances of the uncharged offense was a bargained for item that was part of the overall plea negotiations and ultimate agreement [CR DE 24 ¶ 5].  Movant initialed every paragraph in the Plea Agreement, which indicates that either Movant's trial counsel went through every item in the agreement with Movant, or at the very least, Movant read the Plea Agreement [*Id.*].  At the change of plea hearing, Movant verbally acknowledged that his counsel not only went through the Plea Agreement with him, but that he was satisfied with his counsels' representation when the Plea Agreement was submitted to the Court. [CR DE 39 at 4].

The above facts show that Movant understood the provisions in the Plea Agreement. When he entered into the agreement, Movant knew about the circumstances surrounding the uncharged offense that might be brought to light by the Government and was sincerely remorseful about it.  Filing a motion *in limine* would potentially limit the Government's ability to speak about the uncharged overdose death, which would directly contradict the bargained-for terms of the Plea Agreement.  It thus appears that such a motion was not filed to stay in line with the Plea Agreement.

In addition, as correctly pointed out by the Government, even assuming *arguendo* that the Government chose not to charge Movant with the overdose death and still introduce facts about the overdose death at sentencing (without a plea agreement), the facts surrounding Mr. Whitlock's overdose death would most likely have been admissible on grounds that such facts were "inextricably intertwined with the evidence regarding the charged offense."  *U.S. v. Saunders*, 196 F. App'x 873, 875 (11th Cir. 2006) (officer's testimony about an uncharged drug sale deemed admissible as "such evidence fairly can be characterized as 'inextricably intertwined' with the government's case because it related to the chain of events immediately preceding the traffic stop in which the cocaine was found" and explained certain relevant conduct by the defendant regarding an attempted cocaine delivery).  Similarly, in this case, the facts surrounding Mr. Whitlock's death were inextricably intertwined with the charged offenses.  As such, trial counsel cannot be said to be ineffective for failing to file a motion *in limine.*

Finally, Movant claims his trial counsel was ineffective for failing to object to the Government's disclosure of facts relating to an uncharged crime during the sentencing hearing. As stated above, this claim is not borne out in the record.  The Plea Agreement expressly

allowed the Government to inform the Court about the uncharged offense at sentencing [CR DE 24 ¶ 5 (the Government "reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning [Movant] and [Movant's] background.")].  Movant signed the Plea Agreement and initialed each paragraph. *Id.*  Before the Plea Agreement was accepted by the Court, Movant verbally specified that he read, understood, and agreed to its terms [CR DE 39 at 4].  As such, Movant explicitly acknowledged and agreed to the possibility that the facts surrounding Mr. Whitlock's death could be brought up during his sentencing hearing.  Since Movant agreed to this in the Plea Agreement, this final claim lacks merit.

### III.  **CONCLUSION**

The Court finds Movant's § 2255 Motion is timely.  However, Movant's arguments on the merits are unavailing and conclusively refuted by the record.  As discussed above, there is no support for a finding that Movant's trial counsel provided constitutionally ineffective assistance at any point during the underlying criminal proceedings.

On the contrary, given the overwhelming evidence against Movant, the significant uphill battles Movant faced in any attempts to limit the admission of facts surrounding Mr. Whitlock's overdose death, and the large difference in potential penalties Movant faced if he plead guilty versus going to trial under the circumstances in this case, there is no evidence to support a finding that counsel acted objectively unreasonable or provided ineffective assistance at any point.  A twenty-year sentence is a fair result considering Movant's admitted involvement in distributing large quantities of drugs and possessing a firearm in furtherance of his drug trafficking activities, together with an overdose death of a known individual with surviving

loved ones who were prepared to speak at sentencing.     The Court thus respectfully **RECOMMENDS** that the Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [DE 1] be **DENIED**.

### IV.       NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with U.S. District Judge Donald M. Middlebrooks within 14 days after being served with a copy.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  11th Cir. R. 3-1.

**DONE AND RECOMMENDED** in Chambers at West Palm Beach, Florida, this 14th day of December, 2020.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE